# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF VIRGINIA
### Alexandria Division

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | \| | |
| | \| | |
| v. | \| | 1:23-CR-172-MSN |
| | \| | |
| ELISHA JASON ALBERT, | \| | |
| | \| | |
| Defendants. | \| | |

## MOTION TO ISSUE SUBPOENA *DUCES TECUM*

Mr. Elisha Jason Albert, by counsel, pursuant to Rule 17(c) of the Federal Rules of Criminal Procedure, hereby respectfully moves this Court to enter the attached proposed order directing the Clerk to issue two (2) subpoenas *duces tecum* for: (1) all video/audio footage from the external security cameras at the Giant Food grocery store, including the Giant Food gas station, at 5581 Merchants View Square in Haymarket, Virginia from September 24, 2023 to September 26, 2023; and (2) all search logs for Mr. Albert's phone number in Accurint from September 16, 2023 to September 25, 2023.

The defense has a duty to investigate the evidence this case. *See Coles v. Peyton*, 389 F.2d 224, 226 (4th Cir. 1968) ("Counsel must conduct appropriate investigations, both factual and legal, to determine if matters of defense can be developed, and to allow himself enough time for reflection and preparation for trial."); *see also In re Martin Marietta Corp.*, 856 F.2d 619, 621 (4th Cir. 1988) (citing *California v. Trombetta*, 467 U.S. 479, 485 (1984)("Rule 17(c) implements the Sixth Amendment guarantee that an accused have compulsory process to secure evidence in his favor.").

*Video/Audio Footage at Giant Food*

In this case, the FBI arrested Mr. Albert in Haymarket, Virginia at a Giant Food gas station. No law enforcement agent at the arrest scene had observed Mr. Albert in person before his arrest, though they allege they had a U.S. passport and Texas DMV photo of him. Law enforcement also would not have known what car Mr. Albert was driving as he was in a rental vehicle.

In response to defense discovery requests, the Government indicated there were no body-worn camera footage, police cruiser footage, or other video of the arrest. The Government also indicated there are essentially no police reports written about the details or circumstances of Mr. Albert's arrest, aside from documenting that "an arrest occurred." Finally, the Government represents that no electronic devices, like an IMSI catcher, were used in Mr. Albert's apprehension.

Based on the defense investigation thus far, it is believed that as soon as Mr. Albert exited his vehicle, multiple law enforcement agents approached him with guns drawn, violently slamming Mr. Albert to the ground. This occurred without law enforcement first asking for verification of who he was, and without knowing anything about the vehicle he would have been driving. Such violent and immediate use of force is incongruent with the notion that law enforcement's only basis for identifying Mr. Albert and his location was the two small government-issued photos, and a general sense of when and where Mr. Albert would be from text messages communications.

Instead, it is more likely that law enforcement had other currently undisclosed information that afforded them such a high degree of confidence that the person

stepping out of that particular car at that particular moment was in fact Mr. Albert. That there is not a *single* report documenting the take down and arrest from the approximately 15 law enforcement officers on the scene, when the discovery files contain such mundane minutia as law enforcement placing a CD in a file or preparing a photo log, further substantiates this point.

Given the lack of reporting and questionable circumstances of this arrest, it is necessary for defense counsel to review the video/audio footage from the arrest location to investigate and verify the details of the scene, the results of which could affect the voluntariness of his follow-on statements. This request is relevant, material, and necessary to the preparation of Mr. Albert's defense.

### *Accurint Search Logs*

When the activity alleged in the indictment first came to the government's attention, the only information the government had regarding the identity of the suspect was a phone number. The issue of how the government determined that phone number to be Mr. Albert is critical to determining whether his Fourth Amendment rights were violated, and the government's explanations in that regard have varied, raising more questions than answers. The FBI agent implied in his affidavit for anticipatory search warrant that after the FBI obtained the phone number, it determined Mr. Albert's identity using Department of State passport records:

> 24.     Through a search of the U.S. Department of State passport application database, the FBI identified the phone number ending in 4065 in the passport application of Elisha Jason ALBERT (the SUBJECT), date of birth of 09/02/1998, of Garland, Texas. As mentioned in paragraph 16, this is consistent with the date "JORDAN" communicated to MV on Snapchat as being his birthday.
>
> 25.     On or about September 22, 2023, an administrative subpoena was served on T-Mobile for the 4065 number. T-Mobile responded that the phone number was registered to an individual, whom the FBI believes to be Elisha Jason ALBERT's brother.[3]
>
> 26.     A search of the Texas Department of Motor Vehicle (DMV) database reveals Elisha Jason ALBERT's address to be in Garland, TX at the address provided by T-Mobile.[4]
>
> 27.     MV was shown the TX DMV photograph of Elisha Jason ALBERT and MV stated the person in the photo "looks like 'Jordan.'" However, MV knows he wears glasses,

When defense counsel requested to review the records and procedures used from the Department of State search, the Government first responded that an agent "queried a Department of State (DoS) database using Mr. Albert's phone number as the selector." The next day, the Government "clarified" that the Government actually used an electronic data reporting service called Accurint to search the phone number in question – law enforcement only used the DoS database using Mr. Albert's name.  Law enforcement likely omitted Accurint from its affidavit because the data is error prone,

and violative of individual's privacy rights.[1]  Again, despite the existence of the most trivial investigatory steps being documented in the discovery file, it remains entirely void of any description of an FBI agent querying Accurint. Yet, this is a critical step in the investigatory process and the defense needs to verify the search results from this FBI inquiry.  Accurint keeps logs of all searches for billing purposes.  This request is relevant, material, and necessary to the preparation of Mr. Albert's defense.

WHEREFORE, the Defendant respectfully requests that the Court grant this motion and enter the attached proposed orders.[2]

Respectfully submitted,
ELISHA JASON ALBERT
By Counsel


_____/s/_____
Yancey Ellis (VSB 70970)
Counsel for Defendant
108 N. Alfred Street, 1st Fl
Alexandria, Virginia 22314
703.684.7908 / Fax 649.6360
yancey@carmichaellegal.com

---

[1] "Source data is sometimes reported or entered inaccurately, processed poorly or incorrectly, and is generally not free from defect."  *Online Disclaimer*, Accurint for Law Enforcement, available at https://risk.lexisnexis.com/products/accurint-for-law-enforcement (last accessed 12/14/2023); *LexisNexis illegally collected and sold people's personal data, lawsuit alleges*, CBS News (Aug. 16, 2022) (available at https://www.cbsnews.com/news/lexisnexis-lawsuit-collected-sold-personal-data-immigration-advocates-allege/).

[2] The timeline in this matter is compressed and counsel has requested a return on the documents for 12/21/2023, the same day that the motions in Mr. Albert's case are due. Counsel will ask for leave of Court to supplement or add to his motions should it be necessary after review of the return.

## CERTIFICATE OF SERVICE

I certify that on December 14, 2023, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send a notification of such filing (NEF) to all parties to this action.

_____/s/_____
Yancey Ellis